FILED
2018 Nov-09 AM 09:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
HUNTSVILLE DIVISION**

JORDON JACKSON,
KENDRA JONES,
TERRY MATTHEWS III, and
SIMEON SYKES,

*Plaintiffs*,

v.

MADISON COUNTY BOARD OF REGISTRARS; LYNDA HAIRSTON, in her official capacity as Chairman of the Madison County Board of Registrars; and JOHN MERRILL, in his official capacity as Secretary of State of Alabama,

*Defendants*.

Civil Case No. ____________________

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiffs Jordon Jackson, Kendra Jones, Terry Matthews III, and Simeon Sykes ("Plaintiffs") submit this memorandum in support of their Rule 65 motion for a temporary restraining order ("TRO") to compel Defendants Madison County Board of Registrars, Lynda Hairston, Chairman of the Board of Registrar, and Alabama Secretary of State John Merrill ("Defendants") to accept, certify and count provisional ballots cast by Plaintiffs on November 6, 2018.

**FACTUAL BACKGROUND**

Plaintiffs are African American students at Alabama Agricultural and Mechanical University ("AAMU"), a historically Black university in Madison County, Alabama. For several weeks leading up to the November 6, 2018 general election, various civic organizations, political

campaigns, and student groups, conducted voter registration and education drives on the AAMU campus.[1] Over 1000 AAMU students—many of whom were first time registrants—including Plaintiffs Jackson, Matthews, and Sykes, participated in the drives and timely submitted, or caused to be submitted, voter registration applications.[2] The on-campus voter registration drives took place between the start of the AAMU Fall 2018 semester and October 22, 2018—the Alabama deadline to submit voter registration applications in time to be eligible to cast a ballot in the November 6, 2018 general election ("Election Day"). Plaintiffs Jackson, Matthews, and Sykes all completed paper applications as part of on-campus voter registration drives.[3] The applications were then hand-delivered by third parties to Defendant Madison County Board of Registrars in advance of the October 22, 2018 deadline. Plaintiff Jones timely submitted her application online at the website operated by Defendant Secretary Merrill, alabamavotes.gov.[4]

On one occasion, when an organizer who conducted voter registration drives submitted registration forms from another historically Black university in Madison County to the Board of Registrars, the organizer was told by the registration clerk "these are not going to go through."[5] On another occasion, when a different organizer went to check on problems being reported by AAMU students with their registrations, Defendant Hairston told her that "we don't have these problems at UAH," a reference to the predominately white University of Alabama at Huntsville.[6]

Following timely submission of Plaintiffs' voter registration applications, Plaintiffs did not receive any notice that their applications were in any way untimely or defective.[7] Nevertheless,

---

[1] Ex. A, Decl. Cindy Allen ¶¶2-3; Ex. B, Decl. Virginia Bailey ¶¶2-3.
[2] Exs. C, D, E, Decls. Jordon Jackson ¶4; Terry Matthews III ¶4; Simeon Sykes ¶4.
[3] *Id.*
[4] Ex. F, Decl. Kendra Jones ¶4.
[5] Ex. B ¶5.
[6] Ex. A ¶4.
[7] Exs. C, D, E, F, Decls. Jackson ¶¶5-6; Matthews ¶¶5-6; Sykes ¶¶5-6; Jones ¶¶5-6.

when Plaintiffs arrived at their appropriate polling location on Election Day, they were informed that their names did not appear on the voter rolls as eligible voters.[8] In turn, Plaintiffs had to cast provisional ballots.[9]

Then, the day after Election Day, November 7, 2018, Plaintiffs checked their registration status on the Alabama Secretary of State official website.[10] Even though they had just been denied the right to vote the day before, the Secretary of State's website confirmed that they were listed as registered, active voters.[11] In addition, the Secretary of State's website confirmed that the Plaintiffs' polling place was the AAMU gymnasium, i.e., the very polling place where they had been told they were not registered the day before.[12] On that same website, Plaintiffs also learned that Defendants had rejected the provisional ballots they had cast on November 6;[13] ensuring that Plaintiffs' provisional ballots will not be counted.

In Alabama, voters are required to cast a provisional ballot when: (1) their name does not appear on the list of eligible voters;[14] (2) when the voter has been issued an absentee ballot;[15] or (3) when an inspector has knowledge an individual is not entitled to vote.[16] After the polls close on the evening of an election, the provisional ballots are delivered to the board of registrars prior to noon the day after the election,[17] upon which time the board determines (1) whether each provisional ballot was cast by an eligible voter and (2) whether to certify the ballot to be counted.[18]

---

[8] Exs. C, D, E, F, Decls. Jackson ¶7; Matthews ¶7; Sykes ¶7; Jones ¶7; *see also* Ex. G, Decl. Lamar Lee Jr. ¶7.
[9] Exs. C, D, E, F, Decls. Jackson ¶8; Matthews ¶8; Sykes ¶8; Jones ¶8.
[10] *See Registrant Search*, AlabamaVotes.gov, https://myinfo.alabamavotes.gov/VoterView/RegistrantSearch.do (last visited Nov. 8, 2018).
[11] *See* Exs. H, I, J, K, AlabamaVotes.gov: Registration Search Info. Jackson; Jones; Matthews; Sykes.
[12] *See* Exs. L, M, N, O, AlabamaVotes.gov: Polling Place Search Info. Jackson; Jones; Matthews; Sykes.
[13] *See* Exs. P, Q, R, S, AlabamaVotes.gov: Provisional Ballot Search Info. Jackson; Jones; Matthews; Sykes.
[14] Ala. Code § 17-10-2(a)(1)
[15] Ala. Code § 17-10-2(a)(5)
[16] Ala. Code § 17-10-2.
[17] Ala. Code § 17-10-2(d).
[18] Ala. Code § 17-10-2(e).

Upon completion of the certification process, the board of registrars delivers the certified provisional ballots to the canvassing board prior to noon seven days after the election. [19] The canvassing board counts and tabulates the certified provisional ballots.[20] Defendant Madison County Board of Registrars is in the process of certifying ballots and has, in fact, not certified Plaintiffs' provisional ballots, meaning their ballots will not be counted. Without the requested emergency injunctive relief, Plaintiffs will be unlawfully denied their right to vote.

## ARGUMENT

Plaintiffs seek a temporary restraining order on the basis of their statutory and constitutional claims that Defendants failure to process Plaintiffs' timely submitted voter registration applications and to certify and count their provisional ballots is in violation of the National Voter Registration Act (NVRA), the Voting Rights Act (VRA), and the Fourteenth, Fifteenth, and Twenty-Sixth Amendments of the United States Constitution.

The Court should issue an emergency injunction where: (1) the moving party has a substantial likelihood of success on the merits; (2) there will be irreparable injury in the absence of an injunction; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause to the opposing party; and (4) issuing the injunction would be consistent with the public interest. *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005); *see also Windsor v. U.S.*, 379 F. App'x. 912, 916-17 (11th Cir. 2010) ("[T]he four criteria for obtaining a preliminary injunction are identical to those for issuance of a temporary restraining order . . . ."). All four factors are present here.

---

[19] *Id.*

[20] Ala. Code. § 17-10-2(f).

**A. Plaintiffs are Substantially Likely to Succeed on the Merits of Their Constitutional Claims Under the Fourteenth, Fifteenth, and Twenty-Sixth Amendments.**

Plaintiffs timely submitted their voter registration forms, but Defendants failed to process them and thereby disenfranchised those students in the November 2018 election. Defendants' actions directly violate the NVRA, which mandates: "each State shall ensure that any eligible applicant is registered to vote in an election" so long as a "valid registration form is received by the appropriate State election official not later than the . . . the period provided by State law, before the date of the election." 52 U.S.C. § 20507. Similarly, Defendants' actions violate the VRA, which states: "No person acting under color of law shall fail or refuse to permit any person to vote who is entitled to vote . . .." 52 U.S.C. § 10307. By their plain language, these statues unequivocally require state officials to register voters who submit timely applications, and to permit them to vote. Plaintiffs are therefore substantially likely to succeed on the merits of their statutory claims.

Plaintiffs are also substantially likely to succeed on the merits of their claims under the Fourteenth, Fifteenth, and Twenty-Sixth Amendments of the U.S. Constitution.

By failing to timely process Plaintiffs' registrations forms, not providing adequate notice, and subsequently rejecting their provisional ballots, Defendants have deprived Plaintiffs of a constitutionally protected liberty interest in violation of the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. XIV, § 1; *Roe v. State of Alabama*, 43 F.3d 574, 580-81 (11th Cir. 1995) (recognizing that if "the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated").

The recent decision by another district court in this Circuit in *Martin v. Kemp*, No. 1:18-CV-4776-LMM, 2018 WL 5276242 (N.D. Ga. Oct. 24, 2018), is directly on point. In *Martin*, the court granted a preliminary injunction and temporary restraining order with respect to Georgia's

process for processing absentee ballots. *See id*. at *4 n.4. The court held the voters had a substantial likelihood of success on their procedural due process claim because Plaintiffs had shown they were facing deprivation of a constitutionally protected liberty interest by way of constitutionally inadequate process from state officials. *See id*. at *8. Although a state may not be constitutionally required to provide absentee voting, "[h]aving created an absentee voter regime through which qualified voters can exercise their fundamental right to vote, the State must now provide absentee voters with constitutionally adequate due process protection." *Id*. So too here. Indeed, the principles set forth in *Martin* apply with even more force in this case, which involves not an absentee ballot process but access to the ballot in any form. This case therefore clearly implicates the fundamental rights strand of equal protection jurisprudence, *viz*., "where fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined." *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 669 (1966).

Defendants plainly failed to provide constitutionally adequate due process protections in depriving the Plaintiffs of their right to vote in the November 6, 2018 election. Defendants informed Alabama voters that they could register up until October 22, 2018. Plaintiffs registered before that date, yet they were denied the right to vote. That is the essence of a fundamentally unfair process. *See, e.g., Martin*, 2018 WL 5276242, at *8-*9 (recognizing that government procedures that pose an undue risk of disenfranchising voters violate procedural due process, even when, unlike this case, the risk was "by no means enormous").

Moreover, the Constitution prohibits discrimination against African American voters or 18 to 21-year old voters. Specifically, the Fourteenth and Fifteenth Amendments protect against the denial or abridgment of the right to vote on account of race or ethnicity, U.S. Const. amend. XIV,

XV, and the Twenty-Sixth Amendment bars denying or abridging the right to vote on account of age. U.S. Const. amend. XXVL. Courts have found that together the Fourteenth, Fifteenth, and Twenty-Sixth Amendments prohibit discrimination against Black student voters with respect to voter registration. *E.g., Latham v. Chandler*, 406 F. Supp. 754, 755 (N.D. Miss 1976) (action where court enjoined, pursuant to the Fourteenth, Fifteenth, and Twenty-Sixth Amendments, county registrar from treating voter registration applications tendered by Black students attending a historically Black university differently than applications tendered by non-students of any race); *see also United States v. Texas*, 445 F. Supp. 1245, 1261-62 (S.D. Tex. 1978) (3-judge court), *summarily aff'd sub nom. Symm v. United States*, 439 U.S. 1105 (1979); *Frazier v. Callicut*, 383 F. Supp. 15, 19-20 (N.D. Miss. 1974). Here, registration officials made statements indicating concerns about, or skepticism towards, voter registration drives at historically Black universities, and Defendant Board of Registrars failed to process numerous registrations from those students in a timely manner.

Defendants' actions, namely, failing to process AAMU students' timely submitted voter registration applications, not permitting validly registered AAMU students to cast a regular ballot, and subsequently, refusing to certify and count these students' provisional ballots, are clear violations of the Fourteenth, Fifteenth, and Twenty-Sixth Amendments.

**B. Plaintiffs Meet All Other Requirements of a Temporary Restraining Order.**

Plaintiffs also satisfy all other requirements for emergency injunctive relief.

i. *Plaintiffs will suffer irreparable injury if the Court does not grant the TRO.*

Without a TRO, Plaintiffs will suffer irreparable harm, including complete denial of the right to vote. As an initial matter, when, as is the case here, "constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir.

2012). And "[a] restriction on the fundamental right to vote . . . constitutes irreparable injury." *Id*. In this case, there is no doubt that Plaintiffs "in this case would certainly suffer irreparable harm [because] their right[s] to vote were impinged upon." *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986); *see also Dillard v. Crenshaw Cty*., 640 F. Supp. 1347, 1363 (M.D. Ala. 1986) (recognizing that "[g]iven the fundamental nature of the right to vote, . . . it is simply not possible to pay someone for having been denied a right of [such] importance."); *Charles H. Wesley Educ. Found., Inc. v. Cox*, 324 F.Supp. 2d 1358, 1368 (N.D. Ga. 2004) (concluding that rejection of timely submitted voter registration applications constituted irreparable injury), *aff'd*, 408 F.3d 1349 (11th Cir. 2005).

The second TRO factor clearly favors the Plaintiffs.

*ii. The injury to Plaintiffs outweighs any countervailing interests.*

The balance of equities militates in favor of injunctive relief, as protecting the fundamental right to vote outweighs any minimal administrative burden involved in reviewing, certifying, and counting Plaintiffs' provisional ballots. *See Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (potential disenfranchisement "outweighs any corresponding burden on the State, which has not shown that [it] will be unable to cope" with plaintiffs' requested relief). Indeed, Defendants can offer no valid justification for why they did not process Plaintiffs' timely submitted voter-registration applications in time for the election—which would have entitled Plaintiffs to cast a regular ballot. Nor can they offer any valid justification for why they can now not count the provisional ballots of those applicants who timely their submitted their registrations before the October 22 registration deadline. Defendant Madison County Board of Registrars is currently in the process of certifying provisional ballot and the canvassing board tabulates certified provisional ballots beginning November 13, 2018. Therefore, an order requiring Defendants to count the

provisional ballots cast by voters who timely submitted voter registrations will not impede the provisional ballot certification process.

The third TRO factor favors Plaintiffs.

*iii. Granting the TRO serves the public interest*

The TRO would undoubtedly serve the public interest. The Supreme Court has said that there is a "strong interest in exercising the 'fundamental political right' to vote." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (quoting *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972)). And the courts of appeals have made clear that "[t]he public interest . . . favors permitting as many qualified voters to vote as possible." *League of Women Voter of N. Carolina*, 769 F.3d at 247-28 (quoting *Husted*, 697 F.3d at 437); *see also Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338-39 (5th Cir. 1981) (it is not in the public interest to allow "arbitrary and capricious actions" "interfere with the exercise of fundamental rights"). "Like citizenship itself, the right to vote, a fundamental component of citizenship, is certainly comparable in its utmost value and importance." *Simmons v. Galvin*, 575 F.3d 24, 65 (1st Cir. 2009). It is in the public interest to allow Plaintiffs to exercise their right to vote and thus fully realize their rights as citizens.

The final TRO factor favors Plaintiffs.

**CONCLUSION**

For the reasons stated above, this Court should enter a temporary restraining order entering the relief detailed in Plaintiffs' accompanying emergency motion for a TRO and proposed order.

Respectfully submitted on November 8, 2018,

*/s/* Kerri Johnson Riley
Kerri Johnson Riley (asb 9641-e67k)
KERRI JOHNSON RILEY, PC
120 Holmes Avenue, Suite 403
Huntsville, AL 35801
Phone: (256) 535-0800
Fax: (256) 535-0834
kjr@kerrijohnsonriley.net

Catherine Meza*
Daniel S. Harawa*
Kerrel Murray*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
Phone: (202) 682-1300
Fax: (212) 226-7592
cmeza@naacpldf.org
dharawa@naacpldf.org
kmurray@naacpldf.org

**Motions for Pro Hac Vice pending*

*Counsel for Plaintiffs*